care of the Gucci Lopez on behalf of Jay Briley. The court below misconstrued 18 U. S. C. 1 11 to omit an essential element of the assault and this directly of the offense. And this directly resulted in Mr Briley's conviction for conduct that is not criminalized under the statute. Mr Briley was charged with two of the offenses. 1 11 sets out misdemeanor prong of simple assault and felony physical contact with the victim of that assault. The court did not require showing or finding of the assault for despite the statute's plain language, which is where I'll start. This court already found in Campbell that 1 11 sets out several different offenses, discrete offenses, each with its own elements and penalties of all the offenses Congress created in 1 11. It explicitly required assault for two. The misdemeanor, simple assault prong and the felony physical contact with the victim of that assault. In doing so, Congress set out assault when it was setting out the elements of the offenses. It did not similarly do so with some of the other felonies that it sets out in 1 11. This is particularly important because, as the court knows, the words in a statute are supposed to be given their ordinary meaning. That is especially the case when a statute uses a common law term of established meaning. That is exactly what assault is here. It is a common law term with established meaning. And this court has found and has echoed other circuits in their common law definition of assault that a common law and assault is committed when a person willfully attempts to inflict injury on another or threatens your your your reading of this statute. Um, it limits those 66 verbs, um, to certain situations. Uh, and I guess those are the situations in 111 B. But but, uh, and how? How can you? How can you just limit them to 1 11 B? Because if you if you limit them just to situations where bodily, um, injury or or death or use of a deadly or dangerous weapon is involved in you, um, you may protect the person, um, of the physical safety of the government employee. But, um, it seems that Congress wanted not only to protect the physical safety of government employees, but also to protect them against obstruction when they were engaged in the performance of official duties. And your interpretation strips the employees of protection from obstruction in their functions. Although I admit it preserves protection in the most egregious cases, uh, mentioned in 111 and 111 B. But those aren't the only enhancements. The other enhancements, um, deal with the carrying out of government functions. And and you have just, uh, strip the protection from that by saying that four or five of these verbs don't apply. Why doesn't that just gut the statute? It does not, Your Honor, for several reasons. Uh, when I would say that it's still those other verbs still apply on their own commission to the intent to commit another felony. Uh, they also apply. You're saying they can never be a misdemeanor, though they can be if they rise to assault of conduct, they absolutely can be. And that's how Congress chose to set out the statute in this. You're saying there has to be a finding of assaultive conduct? Yes, that's correct. So that in unless there is a finding of assault conduct, your position then is those words are just kind of in there. Uh, they're they're not just kind of in there. They're there to announce that the types of conduct that would be considered interference with the current official or with a former official. That's how you would be able to interfere with the functions as your honor was was the sort of assault of conduct that would be prescribed here. But for the misdemeanor prong, Congress has specifically and clearly set out that that level of conduct must rise to assault of conduct. And that makes sense here because any one of these conducts done on their own other than assault is not does not rise to the level of seriousness that assault does. So you carrying out of government functions and you can't even be convicted of a misdemeanor because of it. Not under the statute. And I'd want to point out that we're standing the fact that there is an intimidation of someone engaged in the performance of official duties. You can't even be, um, um, convicted of misdemeanor for intimidating of a government employee in the performance of the duty. I mean, that just seems to me to completely gut this whole act. It doesn't, Your Honor. And here's why. Uh, there's you can and you can intimidate government official. And if that doesn't rise to assault of conduct, it's not penalized in this statute. But there are plenty of other statutes that deal with obstruction that deal with hindrance of investigations that deal with it. I don't understand why it isn't penalized because the, um, these verbs are written in the disjunctive. They are, Your Honor. But as Campbell found in this word or they do. And as Campbell found in this court and as Davis found the elements that are set out below are just as important in defining the offense. So if if the if that would be a different story. But the statute goes on to add elements for which defendant qualifies for additional penalties. And these are different offenses with elements of the offense set out and simple assault is is a particular requirement and it is a requirement element of conduct. And so is physical contact with the victim of that assault. And these are very specific types of interactions that Congress is targeting here. This isn't saying why this is just not carrying a hole in what is the basic protection for federal employees in carrying out functions and and duties and why this just doesn't tear a gaping hole in it. The way I read the statute was that there were four enhanced penalties and the, um, you know, that that one in two deal with present employees who are engaged in the others of former employees. And then you have four steps up. One where it's only simple assault and that would seem to just the fact that assault is included there would seem to undermine your position. But you have one where the acts constitute only simple assault. So that's a misdemeanor. And then you have another where there's some physical contact with the victim of that assault or whatever. And then you get you can be that's a felony. And then you have a third and a more serious thing where you're using a deadly or dangerous weapon. And finally you have the worst of them where bodily injury is inflicted. So you just have a fourth step up. And when you look at the statute as a whole, you know, that that makes sense. I don't know why you say these verbs only apply selectively because that when you apply the verbs only selectively you leave a big hole in what is the basic protection of the carrying out of government function. Your Honor, it's not so much that these verbs apply selectively. It's that the misdemeanor prong sets a baseline level of seriousness that it's tackling here in the statute. And that is simple assault. And so when that resistance or when that interference rises to the level of creating a fear in the officer of his or her own physical safety, it's a very qualitative distinction and a kind of interference that Congress is targeting here. And then it moves on, just as Your Honor explained, to tackle more and more serious types of offenses that relate to impeding a government official in doing his or her functions but by placing that individual in fear for his or her physical safety. That's the baseline level of seriousness that Congress is targeting. Back to the point, you leave the functions. You do, I do grant you this, that those most serious examples that we're talking about in B do provide a degree of protection for the physical safety. But the statute seeks to protect not only the physical safety of the federal employee but the carrying out of government functions. It's a statute with a dual purpose. And it just seems to me that to say that you can intimidate or interfere with some person while engaged in the performance of official duties and not even be subject to misdemeanor, I find that very troubling. I understand that, Your Honor. And to that I return to the point, and we may look to some of the prior iterations of 18 U.S.C. 111 to see how it's evolved over time, because prior versions did address, Your Honors, exact concern. There wasn't a specification of a lower level of conduct the way there is now setting out simple assault. It simply listed those verbs and said whoever does any of these things shall be guilty of them and be punished in such and such a way. But this statute has evolved to set out a baseline level of seriousness and that starts at simple assault, at the misdemeanor prong. There are other statutes and regulations that agencies can pass in order to protect their agents from being impeded from performing their individual functions. One such is 36 CFR 2.32, which is called interfering with agency functions. And interference, disobeying of a lawful order, false report, false information, all of those are prohibited under that and they're a misdemeanor as well. And so there's a realization by Congress that there are other laws and regulations that tackle some of the interference and intimidation that Your Honor is concerned about and those are penalized under other statutes. This one in particular is concerned with conduct that rises to of a minimum to assault. And that's particularly important because it chose to reintroduce the word assault in setting out the misdemeanor and in setting out the felony physical contact with the victim of that assault, where assault has a very specific and robust meaning at the common law. But doesn't that require us to interpret the term assault differently in these various parts of the statute? I don't think so, Your Honor, and that's because simple assault used to be, the exact prior version of the statute, used to simply bifurcate the penalty between simple assault and in all other cases. And there courts really got themselves into the discussion that Your Honor is talking about. How do we distinguish between simple assault and all other cases of assault? And the Hathaway Court in the Tenth Circuit determined that it would look to both the physical contact limitation and then looked at a sister statute, Section 113. What did the words, you omitted, what are the words acts in violation of this of this section mean? The acts in violation of this section must refer to those verbs. Well, Your Honor, we we argue that the acts in violation of this section or whatever the fact pattern that that that the defendant is charged with. So whatever conduct brings him or her within the potential reach or scope of this statute. And so you look to say but call the acts in violation of this section. Now the acts in violation of the section simply is a matter of textual textualism are impediment, intimidation, interference, resistance. Those are acts. They're verbs. Those are acts and they are in violation of the section because they are listed in the very section. I mean I just I just don't see how your number two I don't see how it dovetails with what Congress was trying to do here which was to make sure that government officials enjoyed a certain degree of protection while they're encompassing while they are carrying out government duties. So both whether you approach it from a policy point of view of what Congress was trying to do overall with this statute or whether you I think it you know I think it falls short on on either dimension. Let me take those in turn your honor. First the the acts in violation. Are you going to address your 404? I I'm happy to do that if your honors wish. It seems to me you're starting to repeat yourself on this. Okay. And you might be wasting some time. All right let me just tackle the acts in violation of the section concern your honor even if I don't you just go with the flow and you've got a yellow light on and why don't you address that for all right I'll address I'll take the court suggestion I'll address the 404 B your honors but as the briefing sets out the 404 B evidence that came in with subsequent act evidence there's no showing of its relevance of its probative value and there's no argument from the government at all on its necessity. Well well but didn't Mr. Briley put into issue an innocent explanation for his conduct? He didn't it was a pretty clear example of opening the door wasn't it? Two two things on that your honor. First Mr. Briley admitted that he was naked in the car and so right there there's after that in terms of the disorderly conduct. But he gave an innocent explanation for that but he just happened to be changing his clothes when someone came by. The standard on on disorderly conduct is whether you've reckless recklessly subjected the public to a risk of public alarm and so it doesn't require him to have a particular it doesn't require a finding of a sexual act it doesn't require that it requires a finding of is irrelevant it's not necessary as this court said in Wilson. It was certainly useful in explaining the significance of prior conduct which Mr. Briley was attempting to connote differently. Your honor I don't think it was relevant to the essential elements of the offense that needed to be shown. If we agree with you yes and I think you've got a strong argument on the necessity prong how do you get over the harmlessness bar because you have overwhelming evidence of what was going on you had the his part sexual partner testifying you had the two police officers I mean this was overwhelming evidence. It was your honor it that evidence that you're discussing is about the disorderly conduct count for charge when this evidence was actually admitted at trial it was linked to Mr. Briley's testimony about his interaction with the police officers and so after the government questions have overwhelming evidence in this case do you not of disorderly conduct of the disorderly conduct your honor perhaps and I think that's one of the reasons why it was sympathetic with your 404 argument I just don't see how you get beyond a harmlessness in their inquiry it's it's not it's harmless it's not harmless your honor because it was introduced specifically to address Mr. Riley's testimony on the 18 USC 111 counts where he suffered a much greater risk of a much greater criminal exposure and a much greater risk of prejudice and in that case your honor there the jury wasn't told at all why it was considering the January incident resulted in a $62,000 restitution award for the four officers one of the officers in particular who suffered serious back injuries and pancreatic problems as a result of this of this conduct and the judge Keenan points out there's March incident that was relatively mild in comparison I mean it wasn't attractive or or in terms of the disorderly conduct statute but it wasn't it didn't rise to the level of what happened on January in in January so why wouldn't the jury's whole view of this case be determined by what they heard in January which was of a far greater import and and the conduct was was much worse and the seems to me the the other the March incident or whatever was was incidental your honor let me let me clarify before I move on to the rest of your statement I do not concede that there was overwhelming evidence of the 18 USC 111 counts at all I was addressing a judge Keenan's comment on the disorderly conduct for injuries come about oh that that wasn't proven beyond a reasonable doubt your honor that was all in the sentencing stage so that that wasn't subject to the same standard of proof at all and the reason why the 404 B matters it's a that's that prejudices as your honors know with 404 B evidence it's bad character evidence it's propensity evidence and it and it leads the jury to judge a defendant by his criminal disposition or apparent criminal disposition and not by the acts that he's being charged with here and here he was being active there being charged with very serious offenses and this prejudice was allowed to extend to all of them all right miss Lopez you have some time for rebuttal and we appreciate it and I'd like to hear from mr. Lee morning your honors and may it please the court my name is David Lee on behalf of the government mr. Riley's interpretation of section 111 suffers from four fundamental flaws first it creates a surplus ish problem second it collapses to the distinction between current and federal employees outlawing a surplus ish problem it reads out the five non-assault verbs I'm sorry your honor it contravenes Supreme Court interpretation of prior versions of the statute in lander and fiola and as the case again and lander and fiola oh yes okay and as judge Wilkins pointed out it extinguishes one of the two important goals of the statute that is both protecting officer safety and protecting government functions and if in fact it creates an assault statute mr. mr. Bradley tries to save it his reading of the statute by following the faulty dicta of Davis second circuit do that 2012 case and a close reading of the statute itself reveals that that interpretations incorrect and it's where such acts involve physical contact with the victim of that assault or the intent to commit another felony such acts involve is it my is the sir is the subject and a verb that modifies both of those clauses so if that those acts are just assaultive and all those the conduct from those two clauses is assaultive and conversely if it's encompasses all the acts and both of those clauses encompass all of those acts and as just Wilkinson pointed out so if for the mr. meter prong where the VAT for the acts in violation of this action constitute only simple assault again it refers to all the conduct in a one day two and that of course is a more natural reading if it fits into the statutory scheme and it's read in context these common law terms must be read read in the context of what they were written and in their statutory scheme and the fifth and sixth circuits in Williams and Gagnon respectively found that these terms were merely terms of art that the Congress used to avoid redundant shorthand of listing every single verb in the statutory text it also collapses the current versus former distinction because by creating an assault statute it ignores the fact that Congress carefully enumerated six distinct verbs that more verbs would apply to the current employees in a1 as versus the retired and a2 because the retired employees would not would no longer be carrying out law enforcement activities and as I mentioned it both Fiola most expressly Judge Blackman Justice Blackman said that there's a two-prong goals for 111 both officer safety and in protecting the functioning of federal powers and mr. Briley's reading of the statute would extinguish the latter finally are the government's reading is the most correct one because it gives effect to all the verbs it increases it's a very sensible statutory scheme as judge judge Wilkinson pointed out in our statute if you forcibly resist you can be charged with a simple with a misdemeanor whereas in mr. Briley's you cannot and it protects both the twin goals of officer safety and governor functions before I leave a section 111 before your honors have any questions that you all want to ask I would like to point out the standard review that applies to count one should your honors find that the government's interpretation is the of 111 is the incorrect one it's undisputed both in the briefs and in my multiple reviews of the transcript there was no objection as to count one of the charges there was no air as we assert as a matter of law just now it wasn't plain the misdemeanor prong was the subject of a circuit split no circuit had interpreted the felony you need to get this resolved as a matter of law here you can count one I think plain air dissolve it resolves the issue because below the mr. Briley object moved to dismiss counts two and three which was died by judge O'Grady and he no way under any version of the yes your honor and I'll turn to judge Keenan raised a question about you know given how horrific the January incident was did you did you need the 404 B I think it was in our definition I think we mr. Briley in the government's definition of necessary the parts in the following way they emphasized repeatedly that it needs to be essential and required and then others we have the wasn't it yes it was your honor but the March incident was in comparison I mean it was disorderly conduct I realized you got a conviction on count for yes but it was it was mild I mean that's right the the two those two situations where somebody is just beating up an officer and going at them and where someone is having sexual intercourse in a car I mean there's there's a night and day difference that is absolutely correct your honor so if there's a night and day difference between the two wouldn't it have been better to keep that out because it's open to the interpretation that you were trying to just paint the pile on as someone of someone of bad morals I mean I agree with judge Keenan suggestion that this is this is harmless because it was overwhelming the evidence in January incident was overwhelming and I think that's what the jury focused on but I just wondered you know was was this a little bit of piling on it it may have been but if we could go through the factors on 404 B I think we have a strong case both on the merit and a really overwhelming case on the homelessness on them I don't mean to cut you off in your answer yesterday but I think this raises a very disturbing this is a very disturbing example to me and and really illustrative of the fact that so often we see cases where the government because it's the government comes in and puts in things it doesn't need and it does it because it can and as a matter of fundamental fairness you had this case dead to rights in January you had the guy engaging in sex in the car you had him assaulting the police officers you had him guilty I don't want to say beyond any shadow of a doubt but you had overwhelming evidence but yet you had to pile on and and then try to show the jury that this guy might be a even weirder than the January 12th events indicated it just really disturbs me that the government doesn't seem to have any sense of balance or fairness in this 404 it's like they push it to the max all the time and this seems to me to be a textbook example of failing to meet the test of Queen Queen says evidence is essential part of the crime on trial or where it furnishes part of the context of the crime now how did it furnish part of the context of the crime because it certainly wasn't essential to the crime on trial well your honor as he did it again or it was trying to do it again on another occasion your honor I respectfully disagree with that characterization as judge Duncan pointed out on he took the stand and this evidence came on it on the government's rebuttal case not it's case-in-chief he raised the explanation that he was in the park to go jogging and change clothes not to engage he was observed having sexual intercourse in the car and his partner testified so how was that fairly in dispute in this case your honor it went how did you need it no question it was good I mean it was probative how do you meet the necessary test of Queen and why isn't this just piling on because he's an unsavory person well I think the government was entitled because he put his defense on the his credibility is his defense on the line and to introduce this introduce this evidence to rebut the case and I would like this sort of disassociate myself from the comments it it is it the top to me okay but it does so with the benefit of hindsight in you didn't lead with this you responded with this I think does make a difference so I I do not share that the characterization although I recognize the legitimacy of the point I understand your point your honor and judge Keenan I I think that's the point we may disagree on I believe it was necessary under Queen to go for an essential why didn't you charge it then you don't have a 404 B excuse me your honor did you charge the why didn't you charge the the March incident it was this it was disposed of in a prior trial pardon it was it was yes it was charged and he was found guilty of the March incident yes you're on its own on its yes it seems to me almost borderline bizarre that the district court said that this was necessary to show modus operandi I mean modus operandi goes to the identity of the accused doesn't it your honor that was argued signature crime that was argued this go to modus operandi we are but we're not focusing on modus operandi your honor we're focusing on the intent element on the case the government gets away with it but you know you're taking a big risk in a lot of serious crimes that is just by piling on it's a point you know someday it's going to come back to bite you if it doesn't it's a point well taken your honor and just to finish off my analysis of the merits of the 404 B analysis it was not prejudicial prejudicial for the for the reasons that judge Wilkins had pointed out the January 2012 incident was was more salacious it was much lengthier in length it was much lengthier in testimony the March 2012 incident where officer long testified was six pages in length the January 12 2012 incident was multiple times longer in length there are even previously admitted testimony of officer Whiteman in the January to the 2000 2001 prior incidents for public masturbation so which was not contested on appeal nor subject to dispute below finally on the harmlessness your honor if you were to find that this there was error committed by meaning this evidence as your office as your honors have pointed out there was overwhelming evidence of of guilt on Cal four including the testimony of officers Mercado with a spillover effect those they address that point yes your honor on the spillover effect other and there was a careful limiting instruction as to what the jury can consider the evidence for and for some let me extend the harmlessness analysis to the the non obscenity charges especially as to count one there was overwhelming evidence on these other charges in light of our reading of the statute there are no other questions we respectfully request that the conviction be affirmed thank you your honors thank you miss Lopez limited time but I'm gonna start with the 111 points that were made first your review the statute as it stood when the Supreme Court announced or spoke about these twin aims of the statute it was in the Ladner case was in the 1950s in the Fiola case with him was in 1975 and the statute has changed since then at that time it read in general whoever forcibly assaults resists opposes impedes intimidates or interferes with a federal officer while engaged in or an account of the performance of official duties shall be fined under this title or imprisoned not more than three years or both the statute as you well know reads very differently now this is a knowing and considered change the statute that Congress has undertaken and one of the one of the ways in which you can see that is that the last amendment to the statute in 2008 specifically referenced the Hathaway decision in the Tenth Circuit and the way that the Hathaway court interpreted assault in the statute and there's no question that the Hathaway assault in terms of deciding what kind with level of seriousness of conduct was going to be addressed the Hathaway court repeatedly refers to assault as as the conduct it's looking to prescribe and when Congress made its changes in 2008 senator Kyle specifically said I look to the Hathaway decision as the most reasoned explanation for the vagueness of the offense that we're trying to clarify here today your honors the government's construction is is it requires this court to do a number of things to ignore the explicit inclusion of assault in the elements of a misdemeanor and physical contact prongs it also requires the court to give assault a meaning different from its own established meaning that the Supreme Court in Steelworkers v. Weber said where words are plain they give meaning to the act and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning it also requires this court to give a new meaning of assault that expands its its liability and expands criminal liability which has also looked down upon just this year the Supreme Court in Barrage said especially in the interpretation of a criminal statute the court cannot give the text of meetings which a minute just to the 404 B question sure of course your honor um how was that was was mentioned what was the mention of and I need to just clarify my understanding of this what was the mention of the mark was any mention of the March 20th incident in the indictment or what no there was not in the indictment in this case no your honor he was he was arrested and the March incident and found guilty of disorderly conduct in a separate proceeding all right so he was found guilty in a separate but that wasn't it wasn't part of the charge in this proceeding not at all not at all your honor and in fact you know one of the points I made before is that when this evidence was introduced during mr. Briley's cross it was supposedly your your question doesn't go to reliability in light of that in light of that earlier no that's that's the one prong of the four prongs your honor that we don't challenge we think we think it's irrelevant necessity prong or the similarity prong we challenge we challenge all of the other prongs so this this wasn't relevant to a proper purpose for what it was introduced we definitely challenge necessity and I just point this court to its language in Wilson establishing what the necessity requirement is and this doesn't do anything as judge Keenan pointed out to go towards the essential elements of the offenses here and it doesn't provide any necessary context certainly to the disorderly conduct and not at all to the counts one through three which is when it was introduced was during mr. Riley's testimony on that and it was so confusing and so disjointed that mr. Riley didn't even know what conduct he was addressing but there wasn't a lot of emphasis put on it was there there was enough your honor that it came in during mr. Riley's cross was objected to the jury saw a sidebar and then he's proceeded to be asked some of the most salacious and sort of prurient questions about this and then the government put on a whole witness on rebuttal just to talk about this March incident just there's no necessity for this kind of evidence to come in and it is strictly prejudicial in the worst way specifically also because the jury instructions those that January incident the facts of that incident were so horrific I can't believe that that didn't didn't drive the case your honor I I disagree I think that as if your honors read the record acts horrific but I think the evidence was vivid and and and pretty significant and at least as more so than anything about the March incident well the March prurience was condensed in a way and the jury was never told why it was listening to it there was no proper purpose articulated to the jury for that but your honor I wanted I do want to tackle before I sit down the idea that there's overwhelming evidence for counts one through three if there's no overwhelming evidence on the record of the actual assault the government never had to elicit the elements of assault as it stands as its own common law established definition because the court had informed it that it would be sufficient if it showed resistance or opposition thank you we appreciate your argument very much and also your argument mr. Lee we thank you both and we'd like to come down and and say hi to you and proceed into our final case
judges: J. Harvie Wilkinson III, Allyson K. Duncan, Barbara Milano Keenan